# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00351-CV

---

### C. C., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 306,226-B, THE HONORABLE JACK WELDON JONES, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant C.C. (Mother) appeals from a final judgment terminating her rights to her child, Alice.[1]  The district court found by clear and convincing evidence that Mother committed at least one predicate ground for termination and that termination was in Alice's best interest.  *See* Tex. Fam. Code § 161.001(b)(1), (2).  Mother brings three issues challenging the legal and factual sufficiency of the evidence supporting these findings.  We affirm.

### BACKGROUND[2]

On January 20, 2019, Mother brought Alice—then two months old—to the emergency room.  She told medical staff that she witnessed the child's father (Father) sexually

---

[1]  We refer to the child and her parents by initials or fictitious names.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b).

[2]  We take these facts from the testimony and evidence admitted at the de novo hearing before the district court.

abuse her. A physician examined Alice and discovered an injury on the exterior of her vagina but no internal exam was possible because of the child's age. Medical staff reported their findings to the Department of Family and Protective Services.

A Department investigator spoke with Mother the same day. The investigator later executed an affidavit detailing the results of the investigation. According to the affidavit, which was admitted into evidence, Mother stated that she lived with her mother (Grandmother) but had been visiting Father. Two days prior, Mother walked into a room and saw Father "masturbating and trying to insert his penis in the child's vagina." Mother "told the father to stop but he did not and then he ejaculated into the infant and he gave the baby back" and "told her that he would kill her if she told anyone." Mother stated that she delayed reporting the abuse because she believed Father would act on his threat and she had no way of leaving the house except on foot. Two days later, Father drove Mother and Alice back to Grandmother's residence. Mother brought Alice to the hospital the same day. Mother also told the investigator that she took Alice to the hospital after considering and rejecting two other options: killing Father or killing Father and then herself, and that she was taking medication for schizophrenia and schizoaffective disorder. Later that same day, an X-ray of Alice found two healed rib fractures.

Two days later, a social worker employed by the hospital spoke to the investigator and raised additional concerns about Mother. Mother had told medical staff that Father had probably inflicted the rib fractures when he watched Alice at seven weeks old. Mother also stated that she had taken Alice to a different emergency room the previous month after noticing "swelling" on one side of the child's body. A physician there told Mother that Alice's "vagina looked like it had been opened up and that a condom was used" and advised her to call the

2

police, but she did not. Mother also stated she was not in fact on any medication or seeing a mental health professional.

The Department gained temporary conservatorship of Alice and petitioned to terminate the rights of both parents. The case proceeded to a bench trial before an associate judge. The associate judge recommended termination, and both parents requested de novo review. *See* Tex. Fam. Code § 201.015 (entitling parties to de novo hearing before referring court). The district court heard testimony from Mother, the Department supervisor overseeing the case, and the children's guardian ad litem, and admitted evidence, including the investigator's affidavit. The district court subsequently found by clear and convincing evidence that Mother had committed two statutory grounds for termination and that termination was in Alice's best interest.[3] *See id.* § 161.001(b)(1)(D), (O), (b)(2). This appeal ensued.

## SUFFICIENCY CHALLENGE

A trial court may terminate parental rights after finding by clear and convincing evidence that the parent's acts or omissions satisfy at least one predicate ground for termination and that termination is in the child's best interest. *See id.* § 161.001(b)(1), (2). "Clear and convincing evidence" is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

The heightened burden of proof in parental termination cases "gives rise to a concomitantly heightened standard of appellate review." *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020) (per curiam). When the standard is clear and convincing, the distinction between legal and factual sufficiency "lies in the extent to which disputed evidence contrary to a finding may be

---

[3] The district court also terminated Father's rights. He is not party to this appeal.

3

considered." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). In conducting a legal-sufficiency review, the reviewing court "cannot ignore undisputed evidence contrary to the finding" but "must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id*. at 630–31. Evidence is legally insufficient if, after conducting this review, the reviewing court concludes that "no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true." *In re Z.N.*, 602 S.W.3d at 545 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

A factual-sufficiency review, on the other hand, requires weighing disputed evidence contrary to the finding against all the evidence supporting the finding. *In re A.C.*, 560 S.W.3d at 631. The reviewing court must consider whether the "disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* Evidence is factually insufficient if "the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266). Under either standard, the reviewing court defers to the trier of fact's determinations on the credibility of the witnesses "so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

**Predicate Findings**

The district court found that the Department had proven that termination was appropriate under subsections (D) and (O). *See* Tex. Fam. Code § 161.001(b)(1)(D), (O). We will only review the sufficiency of the evidence supporting the subsection (D) finding because

"[o]nly one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination." *See In re N.G.*, 577 S.W.3d 230, 233 (Tex. 2019) (per curiam).

Subsection (D) authorizes termination if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D). In this context, to "endanger" means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (citing *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). An endangerment analysis under subsection D "focuses on evidence related to the child's environment." *In re J.E.M.M*, 532 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "A child is endangered when the environment creates a potential for danger and the parent is aware of the danger but consciously disregards it." *Id.* "[I]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in the home" is a part of the child's environment. *In re M.D.M.*, 579 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (quoting *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). A single act or omission can support termination under subsection (D). *J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 524 (Tex. App.—Austin 2019, no pet.).

Mother does not dispute that exposing Alice to Father placed her in danger of sexual abuse but contends that she "did not have the capacity" to appreciate the danger and so could not have "knowingly" disregarded it. She points out that a psychologist who evaluated her for the Department diagnosed her with borderline intellectual functioning, and that her therapist described her in notes as "naïve" and said that it was "not clear how much she understands"

5

regarding the allegations.[4]  But Mother told the investigator that she was aware that Father was a registered sex offender and that his offenses involved children.  Mother was not concerned for Alice because the victims were teenagers and "she did not think he would mess with a child younger than age 12."  Mother confirmed at trial that she "understood the situation" regarding his past offenses but still allowed him to watch Alice alone in November and December 2018.  Moreover, Mother told hospital staff that a physician told her in December 2018 that Alice showed signs of sexual abuse after Father had watched her.  Although Mother gave a different reason for the December hospital visit in her trial testimony, the district court could have reasonably decided that her testimony was not credible given her willingness to allow Father access to Alice.  *See In re J.P.B.*, 180 S.W.3d at 573.  Applying the appropriate standards of review, we conclude that the district court could have reasonably found by clear and convincing evidence that Mother knowingly placed Alice in conditions or surroundings that endangered her.  *See In re K.K.D.B.*, No. 14-17-00302-CV, 2017 WL 4440546, at *9 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pet. denied) (mem. op.) (holding mother endangered child by leaving her alone with father who was convicted child sex offender); *Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *6–7 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.) (holding mother endangered children by exposing them to her boyfriend, who sexually abused them).  We overrule Mother's first issue and do not reach her second issue.

---

[4] The Department contends that the psychological evaluation is not before us because it was not admitted at the de novo hearing.  The referring court is not limited to the evidence admitted at the de novo hearing but "may also consider the record from the hearing before the associate judge[.]" Tex. Fam. Code § 201.015(c).  The Department concedes that the associate judge admitted the report but argues that nothing indicates the district court considered the record from the hearing before the associate judge.  We will assume the district court considered the evaluation because it does not change our disposition of Mother's sufficiency challenge.

**Best Interest**

We next consider Mother's challenge to the district court's finding that termination is in Alice's best interest. Courts use the non-exclusive *Holley* factors to determine the best interest of the child. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The factors include:

- the child's desires;

- the child's present and future emotional and physical needs;

- any present or future emotional and physical danger to the child;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody to promote the child's best interest;

- the plans for the child by the individuals or agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

- any excuse for the parent's acts or omissions.

*Id.*; *see In re E.C.R.*, 402 S.W.3d 239, 250 n.9 (Tex. 2013). There is no requirement that the Department provide evidence for each factor to justify termination, especially if undisputed evidence shows the parent put the child in danger. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see* Tex. Fam. Code § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.").

The evidence supporting termination under subsection 161.001(b)(1)(D) also supports the best-interest finding. *See In re C.H.*, 89 S.W.3d at 28 (holding that same evidence

7

may be probative of both section 161.001(b)(1) grounds and best interest). Additionally, Mother's statements during the case reasonably raise questions about whether she would protect Alice from Father in the future. *See In re J.G.*, 592 S.W.3d at 525 (explaining that "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest" (citing *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.))). The investigator's affidavit states that Mother told a police officer that she wanted Father "to apologize for what he did," that "she still loved him," and that she spoke "as if she and [Father] are still in a relationship together." Later in the case, Mother told the Department supervisor "that she forgave [Father] and that she would want to be with him" but that Father did not feel the same way. At trial, Mother denied wanting to resume a relationship with him and explained that she only wanted to move on. On this record, the district court could have reasonably decided that Mother's testimony that she is not interested in reuniting with Father was not credible. *See In re J.P.B.*, 180 S.W.3d at 573.

It is also relevant that Mother told the investigator that she considered killing Father and herself and that she made conflicting statements regarding whether she was under mental health treatment. Mother contends that she is now more stable as a result of medication and attending therapy. However, the Department caseworker testified that Mother was "not successfully discharged from therapy." Mother testified that she sees a physician who prescribes her medication but gave no specifics. Considering her history of inconsistent statements, the district court could reasonably decide that her testimony that she is under mental health treatment is not credible. *See id.*

There is also evidence that Mother will likely not be able to provide for Alice's needs. Mother testified that she was not employed during the case and is receiving disability

8

benefits. She has no plan for Alice beyond returning to the Grandmother's home where they both lived at the start of the case. However, she did not indicate if they could live there permanently or for how long. This is relevant because "[a] parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citing *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.)). Also relevant is the stability of Alice's current placement and their plans. *See In re C.H.*, 89 S.W.3d at 28 ("Evidence about placement plans and adoption are, of course, relevant to best interest."); *Holley*, 544 S.W.2d at 372 (directing courts to consider "the plans for the child by th[e] individuals or by the agency seeking custody"). Alice has been with the same foster family since the Department removed her. Alice's guardian ad litem described them as loving and capable of meeting Alice's needs. They "treat her as their daughter" and plan to adopt her.

Reviewing the record under the appropriate standards of review and considering the relevant factors, we conclude there is legally and factually sufficient evidence that terminating Mother's rights is in Alice's best interest. We overrule Mother's remaining issue.

## CONCLUSION

We affirm the district court's judgment of termination.

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   November 20, 2020